IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CENTENNIAL BANKSHARES, INC., a Utah Corporation; and JOHN DOES 1–100,<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE OF UTAH acting through the Utah Department of Financial Institutions; G. EDWARD LEARY, an individual; and JOHN DOES 1–20,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>1:17-cv-175<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Brooke C. Wells |

This case arises from Defendants taking possession of Centennial Bank in 2010. Before the court are Defendants' Motion for Summary Judgment based on expiration of the applicable statutes of limitations,[1] and Plaintiffs' Motion for Summary Judgment on Defendants' Tenth Affirmative Defense of Expiration of Statute of Limitations.[2] For the reasons given below, the court grants Defendants' Motion and denies Plaintiffs' Motion.

**UNDISPUTED MATERIAL FACTS**

1. At all relevant times, Centennial Bankshares, Inc. wholly owned Centennial Bank.[3]

2. In June 2009, Centennial Bank stipulated to a Cease and Desist Order, waiving the right to a hearing on charges it was engaging in unsafe or unsound banking practices.[4]

---

[1] Dkt. 25.

[2] Dkt. 16.

[3] Dkt. 2, Ex. 1.

[4] Dkt. 26, Ex.1.

3. On January 21, 2010, the Utah Department of Financial Institutions (UDFI) and Federal Deposit Insurance Corporation (FDIC) sent a Report of Examination to Centennial Bank's Board of Directors.[5] That Report of Examination warned the Board Members Centennial Bank was "critically undercapitalized and therefore [was] no longer viable without an immediate significant capital infusion."[6] Each Board Member signed the Report of Examination.[7]

4. On March 5, 2010, UDFI filed under seal in the Second Judicial District Court for the State of Utah an *ex parte* Verified Petition for Order Approving Possession.[8] In its Petition, UDFI sought court approval for UDFI to take possession of Centennial Bank.[9] The court granted the Petition and entered an Order Approving Possession on the same day the Petition was filed.[10]

5. UDFI filed the case under seal to protect Centennial Bank's assets and avoid a run on the Bank by limiting public knowledge of the Bank's impending closure until after it had been completed.[11] Per the Motion to Seal and corresponding court Order, the case was to remain sealed until March 8, 2010.[12] However, the case was not unsealed until October 19, 2018.[13]

---

[5] Dkt. 26, Exs. 2; 3 at 20:9–14; 4 at 18:9–15.

[6] *Id.*

[7] *Id.*

[8] Dkt. 16, Ex. C.

[9] *Id.*

[10] Dkt. 16, Ex. 1, at 17.

[11] *See* Dkt. 16, Ex. 3 at ¶ 2; Dkt. 26, Ex. 5 at ¶ 6.

[12] Dkt. 16, Ex. E.

[13] *See* Dkt. 28 at 2 (citing Dkt. 28, Ex. A at 2).

6. During or immediately following UDFI taking possession of Centennial Bank on May 5, 2010, UDFI placed Notices of Possession on the entrance of each Centennial Bank branch.[14] The Notices explained Commissioner Leary had "obtained an order from the Second District Court, in and for Weber County . . . authorizing [Leary] to take possession of Centennial Bank."[15]

7. On May 10, 2010, the president of Centennial Bank signed a certificate of service, verifying his receipt of a copy of the Court Order and a "Notice of Need to Seek Judicial Relief Within Ten (10) Days of the Taking of Possession of the Bank."[16]

8. On June 23, 2017, Centennial first requested a copy of the May 10, 2010 Petition and Order by filing a Complaint in the Second Judicial District Court for Weber County, Utah.[17] In response, Defendants produced copies of the Petition and Order to Centennial.[18]

9. After reading the Petition, Order, and *Ex Parte* hearing transcript concerning the Petition, Centennial believed Defendants failed to follow certain statutory requirements when Defendants took possession of Centennial Bank without a contested hearing.[19] Centennial then filed this suit against Defendants for breach of contract, breach of good faith and fair dealing, violation of procedural and substantive due process under the Utah Constitution, violation of the U.S. Constitution under 42 U.S.C. § 1983, and takings.[20]

---

[14] Dkt. 26, Exs. 11, 12 at ¶ 5, and 13 at ¶ 3; *see also* Dkt. 28 at 3–4 (arguing only that the Notice is not material).

[15] *Id.*

[16] Dkt. 26, Ex. 10; Dkt. 26, Ex. 3 at 38:4–40:20; Dkt. 25, Ex. 5 at ¶ 10; Dkt. 26, Ex. 7, at ¶ 7.

[17] Dkt. 26, Ex. 3 at 53:22–24; *see* Dkt. 16, Ex. B at ¶¶ 9–11; Dkt. 26, Ex. 4 at 40:2–41:12; Dkt. 26, Ex. 20; *see also* Dkts. 28, 30 (declining to dispute this fact).

[18] Dkt. 16, Exs. C, D.

[19] *See* Dkt. 2, Ex.1.

[20] *Id.*

## LEGAL STANDARD

Summary judgment is proper when the record reveals no genuine issue of material fact and "the movant is entitled to judgment as a matter of law."[21] Once the movant meets this standard, the burden shifts to the nonmovant to "designate specific facts showing there is a genuine issue for trial."[22] "In applying this standard, [the court must] view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party."[23] Factual disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and facts are material when they "might affect the outcome of the suit."[24] "Cross-motions for summary judgment are to be treated separately; the denial of one does not [necessarily] require the grant of another."[25]

## ANALYSIS

The pending Motions turn on whether the doctrine of equitable tolling applies.[26] Under Utah law, equitable tolling requires the plaintiff to make an initial showing she was "disabled" from protecting her claim.[27] Such disability is commonly shown by establishing plaintiff "did not know nor should have reasonably known the facts underlying the cause of action."[28]

---

[21] Fed. R. Civ. P. 56(a); *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).

[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[23] *Schaffer*, 814 F.3d at 1155.

[24] *Bird v. West Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[25] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

[26] It is undisputed the longest applicable statute of limitations is six years. Dkt. 25 at 14; Dkt 16 at 4–5; Dkt. 30 at 2. It is further undisputed that the limitations period for Plaintiffs' claims began when Defendants took possession of Centennial Bank on May 5, 2010. Because Plaintiffs filed suit more than six years later on June 24, 2017, all of their claims are untimely, unless saved by equitable tolling.

[27] *Garza v. Burnett*, 2013 UT 66, ¶ 11, 321 P.3d 1104.

[28] *Id.* at ¶¶ 10–11 (citing *Berneau v. Martino*, 2009 UT 87, ¶ 23, 223 P.3d 1128).

Requiring an initial disability showing ensures the doctrine of equitable tolling is "not [] used simply to rescue litigants who have inexcusably and unreasonably slept on their rights, but rather to prevent the expiration of claims to litigants who, *through no fault of their own,* have been unable to assert their rights within the limitations period."[29]

Once disability is shown, equitable tolling is available only when: "(1) a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct *or* (2) the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action."[30]

Here, no reasonable jury could conclude Centennial has satisfied its threshold obligation to make an initial disability showing. Centennial knew about the possibility of Defendants taking possession of the Bank in January of 2010. Centennial knew, on March 5, 2010, that Defendants gained approval to take possession of the Bank through an *ex parte* judicial proceeding. Centennial knew Defendants took possession of the Bank. Centennial even received a copy of the Court's Order and a notice that Centennial had ten days to seek judicial relief if it wished to do so. Further there was notice posted at the entrance of every branch of Centennial Bank, on May 5, 2010, explaining Commissioner Leary had "obtained an order from the Second District Court, in and for Weber County . . . authorizing [Leary] to take possession of Centennial Bank."

As a result, Centennial knew it suffered a legal injury (it was seized); it knew how it suffered an injury (as a result of the Order); it knew where it could go to get more information

---

[29] *Id.* at ¶ 11 (emphasis in original).

[30] *McBroom v. Child*, 2016 UT 38, ¶ 34, 392 P.3d 835 (emphasis added).

about the injury it suffered (the Second District Court for Weber County); and Centennial acknowledges all of the facts Centennial needed to assert its causes of action existed on March 5, 2010.[31] Accordingly, Centennial's knowledge of Defendants' judicially-sanctioned possession of the Bank put Centennial on notice of its alleged legal injuries and unquestionably triggered a duty to conduct at least some due diligence. There is no evidence before the court from which a reasonable jury could conclude Centennial conducted any due diligence.

A reasonable plaintiff—in response to (1) UDFI's taking possession of Centennial Bank, (2) receiving a copy of the May 10th Order and "Notice of Need to Seek Judicial Relief Within Ten . . . Days of the Taking of Possession of the Bank, and (3) the posting of notices at the Bank's entrances—would have promptly contacted the Second District Court in Weber County to request a copy of the Petition, Order, and hearing transcript.[32] Because every fact necessary to support its causes of action was contained within the Petition, Order, and hearing transcript, a reasonable plaintiff upon receiving these documents would have known the facts underlying the causes of action currently set forth by Centennial.[33] Centennial did not act reasonably. It instead "inexcusably and unreasonably slept on [its] rights."[34] Where, as here, a litigant's failure to timely assert their rights within the limitations period is a product of their own failure to act, the doctrine of equitable tolling will not operate to "rescue litigants."[35]

---

[31] Dkt. 35.

[32] Because the case was sealed, Centennial would not have immediately obtained a copy of the Petition, Order, and hearing transcript. But, as Centennial indicated at oral argument, there is no evidence suggesting that contacting the Second District court would *not* have ultimately resulted in the production of the Petition and Complaint. *Id*.

[33] Centennial conceded at oral argument that every fact necessary to support its causes of action was contained within the Petition, Order, and hearing transcript. *Id.*

[34] *Garza*, 2013 UT at ¶ 11.

[35] *Id.*

Centennial's inability to assert its claims is solely a product of its failure to make reasonable investigation of the facts existing at the time when it had duty to conduct at least some due diligence. No reasonable jury could conclude otherwise.

Centennial fails to make an initial showing of a disability, and thus equitable tolling is unavailable. Accordingly, the court GRANTS Defendants' Motion,[36] DENIES Plaintiffs' Motion,[37] and DISMISSES Plaintiffs' Claims with prejudice as untimely. The Clerk of Court is directed to close the case.

SO ORDERED this 6th day of June, 2019.

BY THE COURT:

_____
ROBERT J. SHELBY
Chief United States District Judge

---

[36] Dkt. 25.

[37] Dkt. 16.